CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 19 2005

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL RAY HARVEY,<br>    Plaintiff, | Civil Action No. 7:05-cv-00019 |
| v. | **MEMORANDUM OPINION** |
| L. W. HUFFMAN, et al.,<br>    Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff Michael Ray Harvey, a Virginia inmate proceeding pro se, originally brought this action as a motion for interlocutory injunctive relief.[1] The court construed and filed the pleading conditionally as a civil rights complaint under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. The court directed Harvey to provide the court with documentation indicating that he had exhausted administrative remedies before filing the lawsuit and advised him that absent such documentation, the court could not find that he had demonstrated imminent danger of irreparable harm. The court also required Harvey to submit financial information as required under 28 U.S.C. §1915(b). Harvey filed numerous responses to the court's order, along with a motion to withdraw his request for interlocutory injunctive relief, as he had been transferred. Upon review of the record, I find that Harvey's entire action must be dismissed. It is clear from the record that he failed to exhaust administrative remedies as required under 42 U.S.C. §1997e(a) before filing this civil action as to his claims related to alleged assaults against him in December 2004 and January 2005. His remaining claims must be dismissed, pursuant to 28 U.S.C. §1915(e)(2), for failure to state a claim upon which relief may be granted.

### I. Harvey's Claims

**Claim 1: Excessive force**

In his initial submission to the court, executed on January 4, 2005, Harvey alleged that

---

[1] After filing the action, Harvey was transferred to another prison and subsequently released from prison on or about April 5, 2005.

1

Correctional Officer D. Lambert and Sgt. J. Johnson used excessive force against him on December 31, 2004, at Keen Mountain Correctional Center (KMCC), causing him to suffer a severe head injury, a cut requiring stitches, and loss of blood.[2] He claimed that he had no state remedies available for these matters. In very vague and general terms, he asserted that he was in immediate danger of suffering physical harm without the court's immediate intervention, as officers had threatened to harm him.[3] Yet, he admitted that he was being held in medical isolation, away from the officers involved in the alleged assault. Harvey also complained that his isolation status prevented him from obtaining witnesses and from enjoying certain privileges such as regular showers, outside recreation, or communication with other inmates. He feared guards might contaminate his food and complained that medical staff did not provide him with prescribed medication in a timely manner.

In later pleadings, Harvey brought additional allegations. See Dkt. No. 3 & 4. Officers had again assaulted him on January 14, 2005, and he was thereafter transferred to regular segregation status. As a result of the incident on December 31, 2004, officers charged Harvey with assaulting Lambert. After a January 7, 2005, disciplinary hearing, the hearing officer dismissed the charge. During the January 14, 2005, assault, officers formed an "extraction team" and entered Harvey's cell while he was sleeping in order to remove a blanket he had draped over a light fixture. During the incident, officers allegedly struck and shocked Harvey with an electronic shield. He allegedly suffered a broken nose and neck and head injuries.

**Claim 2: Due Process Violations at BCU**

In another section of the complaint, Harvey alleged that another group of defendants from

---

[2]Although Harvey only names these two defendants as being personally involved in the December 31, 2004, assault, he alleges that five guards attacked him and that various KMCC administrators failed to allow him to press state criminal charges against the perpetrators and destroyed evidence of the assault.

[3]Harvey alleges that two officers at KMCC have threatened his life. Officer F. E. Lockhart told him that he would not leave KMCC alive, and Officer Perkins told Harvey that if he had had the chance, he would have beaten Harvey to death.

2

the Botetourt Correctional Unit #25 (BCU) brought false disciplinary charges against him and denied him procedural rights at hearings. These actions allegedly caused Harvey's good time earning rate to be reduced and resulted in his transfer to a higher level security facility where he was at risk from violent inmates and could not earn as much good conduct time.

## Claim 3: Denial of Treatment for Hepatitis C since 2003

Finally, in the last part of the complaint, Harvey asserted that he was denied treatment for HCV (Hepatitis C), from July 26, 2003 until April 2005, by a group of medical defendants, all VDOC employees.

## II. Failure to Exhaust Administrative Remedies on Claim 1

Title 42, United States Code, Section 1997e(a), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

By the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoner's civil rights action. See Dixon v. Page, 291 F.3d 485, 489 (7th Cir. 2002). The United States Supreme Court has held that Section 1997e(a) applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Nussle v. Porter, 534 U.S. 516, 532 (2002), and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies, Booth v. Churner, 532 U.S. 731 (2001). To meet the exhaustion requirement of §1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners, but need not file suit in state court or seek redress through other methods before filing his §1983 action. See Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). As a §1983 is a civil action, the plaintiff bears the burden of proof to demonstrate to the district court that before filing the lawsuit, he exhausted "available" administrative remedies as to each of his claims or no such remedies were available. See Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998). If he does not so demonstrate, the court may properly dismiss his

3

complaint without prejudice under §1997e(a). Id.

The court takes judicial notice of the fact that the VDOC has a well-established inmate grievance procedure, including three levels of response (informal inmate request, regular grievance (Level I) and appeal (Level II)). See Division Operating Procedure (DOP) 866. Emergency grievances are not part of this exhaustion process. DOP 866-4.0.

It is clear from the complaint itself and from Harvey's later responses (see Dkt. No. 7 ) that when he filed the complaint in mid-January, 2005, Harvey had not completed the grievance procedures available to him in the VDOC system. He admitted as much on the initial complaint, claiming without explanation that there was no remedy available to him regarding his claims. He stated that he filed emergency grievances and wrote letters to various administrators, the United States Department of Justice, state court officials, and other officers.[4] These filings do not fall under the established administrative remedies procedure set forth for VDOC inmates in DOP 861. Harvey cannot create his own administrative remedies. His appeals from disciplinary charges related to the alleged assaults also cannot satisfy the §1997e(a) requirement to exhaust administrative remedies as to his claims that officers used excessive force against him or that they denied him livable conditions in medical isolation or segregation. Moreover, as the completion of the disciplinary appeal process occurred after Harvey filed this action, he did not satisfy §1997e(a) requirements as to his due process claims related to the alleged assaults.

Harvey's belief that he was in immediate danger did not excuse him from the 1997e(a) exhaustion requirement. Indeed, prison officials were much better equipped than the court to provide Harvey further protection or to change his living conditions at the time he first desired such changes. And until Harvey notified officials of his fears through established procedures and gave them an opportunity to alleviate the alleged risks of harm, he could not prove his claim to the court that he faced imminent or irreparable harm. Moreover, Harvey now recognizes that his

---

[4]One of the "remedies" Harvey presents as satisfaction of the §1997e(a) requirement is a letter to Warden Bassett, offering to settle this lawsuit in exchange for a transfer to an institution where he felt safe.

4

claims for injunctive relief, to be transferred away from KMCC, are moot, since he was transferred and then released. Any claims for monetary relief, however, must also be dismissed, on the ground that Harvey filed suit prematurely–before fulfilling §1997e(a) exhaustion requirements. Based on the foregoing, I conclude that all aspects of Harvey's Claim 1 in this lawsuit must be dismissed without prejudice, pursuant to §1997e(a).

### III. No Federal Due Process Implications in Claim 2

Harvey claims that officials deprived him of liberty interests without due process in charging and convicting him of eight disciplinary offenses allegedly committed while he was at the Botetourt Correctional Unit #25. He submits extensive documentation of these charges, the hearings conducted on each charge, and his appeals and officials' appellate responses as to each charge. He claims that several of the charges were false or unsupported by the evidence and that officials did not provide him with required procedural protections during disciplinary proceedings. The record indicates, however, that Harvey did not at any time lose earned good conduct time as a penalty for any of the challenged disciplinary convictions. Rather, he was sentenced to terms of isolation. Officials also referred him for a classification hearing, which resulted in a reduction in the rate at which he could earn good conduct time. This reduction caused his estimated good time release date to be pushed from April 1, 2005 to April 22, 2005. Harvey also claims that officials used the disciplinary convictions as a basis to transfer him to a higher security facility.

On these facts, I cannot find that Harvey suffered deprivation of any constitutionally protected liberty interest. An inmate is not automatically entitled to due process merely because a punitive purpose underlies an action affecting his privileges. Sandin v. Conner, 515 U.S. 472 (1995). In fact, an inmate has no right to due process in the context of a disciplinary hearing unless the punishment imposed represents a dramatic departure from the sentence contemplated by the inmate's criminal conviction or the institutional conviction will inevitably affect the duration of his confinement. Id. Plaintiff has presented no allegations suggesting that, as a result

5

Case 7:05-cv-00019-JLK-mfu   Document 28   Filed 04/19/05   Page 5 of 9   Pageid#: 407

of his disciplinary convictions, he was exposed to conditions dramatically departing from those contemplated by his sentence or that the duration of his confinement was inevitably affected by the reduction in his good time earning rate. As he fails to present facts indicating that he was deprived of any federally protected liberty interest, he has no federal due process claim regarding the procedures used to convict him of these disciplinary charges. Id. To the extent that officials violated prison regulations or state procedural law, such actions do not present claims actionable under §1983. See Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Furthermore, as Harvey has no remaining federal claims related to the disciplinary convictions, I decline to exercise supplemental jurisdiction over any state law claims arising from the same facts. See 28 U.S.C. §1367(c). I will dismiss Claim 2 in its entirety, pursuant to §1915(e)(2).

### IV. No Deliberate Indifference to Medical Needs

In Claim 3, Harvey faults numerous prison officials and medical personnel for failing to provide him with treatment for Hepatitis C (HCV). For purposes of this opinion, I presume that Harvey has this serious, terminal disease, that at least one doctor has found that he is suffering from symptoms of the disease, and that he did not receive interferon treatment for the disease during his most recent term of incarceration in VDOC institutions. Nevertheless, I am satisfied that Harvey cannot prove facts consistent with his allegations, demonstrating that VDOC staff have acted with deliberate indifference to his serious medical needs in refusing to provide him the desired treatment.

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97 (1976), but questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Harvey is pursuing an appeal from another case he filed in this court, concerning VDOC

officials' failure to provide him interferon treatment for HCV during a prior term of incarceration he served. See Harvey v. Mahon, Civil Action No. 7:02-cv-00829 (W.D. Va. 2004). In that case, he sued VDOC staff and medical personnel for denying him HCV treatment, apparently based on the short length of the term of confinement he was then serving. I granted defendants' motions for summary judgment in that case, finding no deliberate indifference. As the primary basis for denying Harvey treatment, VDOC doctors in that case, like the doctors sued in Harvey's current suit, cited the VDOC medical policy to provide interferon treatment for inmates with HCV only if the inmate has more than 18 months confinement left to serve so as to allow for complete treatment and follow-up. The policy also requires the inmate to be housed in a facility with a proper level of medical monitoring available and sets several other criteria doctors must review before prescribing HCV treatment. I take judicial notice in the instant case of the evidence produced in the previous case regarding this HCV treatment policy.

In the present case, I find no indication that any of the defendants responsible for Harvey's medical care from 2003 to 2005 ignored those needs. Rather, the records he submits clearly indicate that personnel monitored the progress of Harvey's illness carefully, but relied on the VDOC policy regarding HCV treatment in determining not to provide interferon treatment.[5] The policy was clearly formulated by medical officers of the VDOC, based on medical judgments about available medications, recommended treatment schedules, side effects, and estimated effectiveness. The hard facts are that a high percentage of HCV patients treated with interferon do not benefit from the drug. Thus, I find that Harvey does not allege facts indicating that any of the defendants knew that denial of interferon treatment for Harvey, pursuant to the VDOC policy criteria, put him at any more serious risk of substantial harm than he already faced from the HCV itself. To the extent that any of the defendants should have sought updated medical information about the benefits of treating Harvey's condition, should have changed the

---

[5]Harvey vaguely refers to a blood cell disorder that has been undiagnosed. Harvey fails to allege facts indicating that this condition qualifies as "serious" or that any defendant knows of serious risks to Harvey's well-being that this alleged disorder poses.

7

policy or should have applied it differently in Harvey's situation, their failure to take such steps represents nothing more than medical malpractice, which is not a constitutional claim actionable under §1983. I will dismiss Harvey's medical claims, without prejudice, pursuant to §1915(e)(2).

## V. Pending Motions

Harvey included several motions in his initial submissions. The court informed him that the motion for interlocutory relief would not be addressed until he provided the court with full information about his exhaustion of administrative remedies. Harvey requested several extensions of time in order to comply with the court's conditional filing order, all of which will be granted. As discussed, however, his motion became moot, once he was transferred to another prison. Therefore, his motion to withdraw his request for interlocutory relief will be granted.

Harvey also moved in his initial pleading for appointment of counsel. A district court has no authority under 28 U.S.C. §1915 to force counsel to represent an indigent, pro se civil plaintiff, as the court has no authority to compensate counsel for the work done on such a case. See Mallard v. United States District Court, 490 U.S. 296, 309 (1989). However, under exceptional circumstances, the court should request an attorney to represent an indigent, civil plaintiff. Id. at 310; Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). The Fourth Circuit has identified two factors to be considered in determining whether such exceptional circumstances exist in a given case: (1) the type and complexity of the case and (2) the ability of the individual to present it. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds, Mallard, 490 U.S. at 309. As Harvey's claims are herein dismissed for various reasons, all bearing no relation to the complexity of the claims or Harvey's ability to present the claims, I find no exceptional circumstances warranting appointment of counsel.

Harvey's other pending motions are moot, inasmuch as I have determined that his claims must be dismissed without further development. Therefore, I will deny such motions. An appropriate order shall be issued this day.

8

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 19th day of April, 2005.

/s/ Jackson L. Kiser
Senior United States District Judge